**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI**

**DAVID L.,**

          **Plaintiff,**

    **v.**                            **Civil Action 1:25–cv–00068
Judge Douglas R. Cole
Magistrate Judge Kimberly A. Jolson**

**COMMISSIONER OF
SOCIAL SECURITY,**

          **Defendant.**

<u>**REPORT AND RECOMMENDATION**</u>

Plaintiff David L. challenges the denial of his application for Social Security benefits. For the following reasons, the Undersigned **RECOMMENDS** that the Court **OVERRULE** Plaintiff's Statement of Errors (Doc. 11) and **AFFIRM** the Social Security Commissioner's decision.

**I.**    **BACKGROUND**

Previously, Plaintiff successfully applied for disability insurance benefits ("DIB") and was found disabled for a closed period from December 12, 2016, through April 11, 2019. (R. at 79–89). Roughly three years after the closed period expired, Plaintiff sought DIB again. This time, he alleges disability as of March 6, 2021, due to a back injury, heart failure, depression, and anxiety. (R. at 219–20, 264). After his application was denied initially and on reconsideration, Administrative Law Judge Donald D'Amato (the "ALJ") heard the case on December 11, 2023. (R. at 53–75). Ultimately, the ALJ denied Plaintiff's application. (R. at 31–52). Next, the Appeals Council denied Plaintiff's request for review, making the ALJ's ruling the Commissioner's final decision. (R. at 1–7).

Plaintiff, who proceeds *pro se*, filed this action. (Doc. 1). The Commissioner filed the administrative record on April 7, 2025. (Doc. 10). Plaintiff timely filed a Statement of Specific

Errors (Doc. 11), and the Commissioner responded (Doc. 13).  Plaintiff then filed a "Motion for Summary Judgment."  (Doc. 14).  The Undersigned construes this as a reply in support of his statement of errors and has fully considered the arguments therein.  The matter is ripe for review.

### A. Relevant Statements to the Agency

The ALJ summarized Plaintiff's statement to the agency as follows:

[Plaintiff] reportedly sometimes forgets to take medications and needs reminders to shower and shave (B7E/2–3). However, he is able to drive, go out alone, shop in stores and by computer, pay bills, and count change (B7E/4), which suggests that he is able to understand, remembering, and carry out a short sequence of tasks. ***

In the Third Party Function Report, [Plaintiff]'s spouse wrote that [Plaintiff] sometimes "has issues with others and their attitudes" and occasionally appears "distant" (B7E/6). Nevertheless, she also noted that [Plaintiff] spends time with others on the phone and through email and texting, and is able to go to the store, gas stations, and doctors visits (B7E), which tends to demonstrate that [Plaintiff] is able to maintain appropriate relationships by communicating with others and tolerate crowds and superficial interaction with unfamiliar people in the community. He has never been fired or laid off from a job because of problems getting along with others (B7E/7). ***

[Plaintiff]'s wife reported that he does not handle stress or changes in routine very well (B7E/7). She added that he is "stress out, depressed and angry sometime about his pain" (B7E/7). ***

He has noted some limitations in activities such as meal preparation and housework, but it appears that he attributes them primarily to alleged physical symptoms and limitations (B7E).

(R. at 37–39).

### B. Relevant Medical Evidence and Medical Source Opinions

Discussed further below, the ALJ summarized Plaintiff's medical records and symptoms relating to his physical and mental impairments.  (R. at 40–42).  Also discussed below, the ALJ summarized and evaluated the medical source opinions, including the opinions of Kathryn Francescon, FNP; Travis Parkulo, MD; Christie Kincaid, PsyD; and April Gillespie, APRN.  (R. at 43–45 (citing R. at 367–370, 559–561, 604, 730–733)).  The ALJ additionally summarized and

evaluated the prior administrative medical findings of the State agency medical and psychological consultants.  (R. at 45 (citing R. at 90–96, 99–108)).  The ALJ finally noted the statements offered by Plaintiff's spouse in a Third Party Function Report.  But he concluded that "she is not a medical source and her statements concerning [Plaintiff]'s alleged limitations are not fully consistent with the medical evidence including the objective findings and treatment history[.]"  (R. at 45 (citing R. at 292–299)).

### C.      The ALJ's Decision

The ALJ found Plaintiff meets the insured status requirements through December 31, 2025.  (R. at 36).  And he had not engaged in substantial gainful activity since March 6, 2021, the alleged onset date.  (R. at 37).  The ALJ also determined that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine with right lower extremity radiculopathy status post L5–S1 discectomy in 2017; degenerative disc disease of the cervical spine; atherosclerotic heart disease, status post myocardial infarction and coronary artery bypass graft (CABG); hypertension; recurrent left axilla abscess; and generalized anxiety disorder.  (R. at 37).  Still, the ALJ found that none of Plaintiff's impairments, either singly or in combination, meets or medically equals a listed impairment.  (Id.).

The ALJ assessed Plaintiff's residual functional capacity ("RFC") as follows:

[Plaintiff] has the residual functional capacity to perform simple routine tasks with no more than occasional changes in the routine work setting; lift and/or carry 5 pounds frequently and 10 pounds occasionally; stand and/or walk with normal breaks for 2 hours in an 8–hour workday, but requires the opportunity to stand for 15 minutes at one time before needing to sit for 2 minutes before resuming standing so long as he is not off task; sit with normal breaks for 6 hours in an 8–hour workday, but requires the opportunity to sit for 1 hour before needing to stand for 2 minutes before resuming sitting so long as he is not off task; can perform pushing and pulling motions with the upper and left lower extremities within the aforementioned weight restrictions for 2/3 of an 8–hour workday, but can only occasionally do so with the right lower extremity; can perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and

reaching for 2/3 of an 8–hour workday; needs to avoid hazards such as moving machinery and unprotected heights, but does not need to avoid hazards typically found in the workplace such as boxes on the floor or ajar doors; no commercial driving; job responsibilities do not include the use of hand–held vibrating or power tools; needs to be restricted to a work environment with good ventilation that allows him to avoid frequent concentrated exposure to extreme heat, extreme cold, and high humidity; and can occasionally climb stairs with handrails, stoop, crouch, kneel, and crawl, but needs to avoid climbing ladders, scaffolds, and ropes.

(R. at 39).

The ALJ concluded that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (R. at 40).

The ALJ determined that Plaintiff is unable to perform his past relevant work as a customer service representative or tractor trailer driver.  (R. at 45).  Relying on the vocational expert's ("VE") testimony, the ALJ found that, considering his age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform at the sedentary exertional level, such as a sorter, inspector or assembler.  (R. at 46–47).  Consequently, the ALJ concluded Plaintiff "has not been under a disability, as defined in the Social Security Act, from March 6, 2021, through the date of this decision[.]"  (R. at 47).

## II.    STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards."  *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).  The Commissioner's findings of fact

4

must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III.    DISCUSSION

As Plaintiff proceeds *pro se*, his filings and arguments are construed liberally in his favor. *Franklin v. Rose*, 765 F.2d 82, 84–85 (6th Cir. 1985) (stating that *pro se* pleadings "are entitled to a liberal construction" and that "appropriate liberal construction requires active interpretation in some cases to construe a *pro se* petition 'to encompass any allegation stating federal relief'") (citations omitted). However, "[l]iberal construction does not require a court to conjure allegations on a litigant's behalf . . . ." *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Furthermore, "[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (citations omitted).

Construed generously, Plaintiff alleges six errors. (Doc. 11). Generally, the Commissioner responds that the ALJ's decision is supported by substantial evidence and does not represent reversible error. (Doc. 13). The Undersigned agrees with the Commissioner.

### A.    Dr. Jerry Tolbert's Opinion

In what can best be construed as his first assignment of error, Plaintiff states:

The ALJ improperly discounted the opinions of Plaintiff's treating physician. Dr. Jerry Tolbert, who opined that Plaintiff is limited to specific limitations, sitting for no more than 2 hours per day, lifting no more than 10 pounds, and requiring frequent breaks due to pain. Under 20 C.F.R. § 404.1527(c), the ALJ must give controlling weight to a treating physician's opinion if it is well–supported and not inconsistent with other substantial evidence. The ALJ failed to provide "good reasons" for assigning Sedentary Work to Dr. Jerry Tolbert's opinion, instead relying on state agency consultant reports or selective evidence. This error

prejudiced Plaintiff by resulting in an RFC that does not account for the full extent
of their limitations.

(Doc. 11 at 1).

As an initial matter, the Social Security rule that Plaintiff cites, 20 C.F.R. § 404.1527(c),
does not apply to his case.  Commonly known as the "treating physician rule," the rule requires
the ALJ to "give controlling weight to a treating source's opinion on the issue(s) of the nature and
severity of the claimant's impairment(s) if the opinion is well-supported by medically acceptable
clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial
evidence in the case record." *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir.
2013) (quoting 20 C.F.R. § 404.1527(c)(2)) (citation modified).  But this rule applies only to
claims filed before March 27, 2017.  20 C.F.R. § 404.1527; *see also Nasser v. Comm'r of Soc.
Sec.*, No. 22-1293, 2022 WL 17348838, at *1 (6th Cir. 2022).  For a claim filed after March 27,
2017—like Plaintiff's (R. at 34)—an ALJ evaluates medical opinions under the factors listed in
20 C.F.R. § 404.1520c and is not required to give more weight to treating physicians.  *See
Masterson v. Comm'r of Soc. Sec.*, No. 24-5512, 2025 WL 317501, at *1 n.1 (6th Cir. 2025)
("[U]nder the new rule, ALJ's must evaluate all medical opinions under the same factors."
(citations omitted)).  Accordingly, Plaintiff's argument that the ALJ's decision must be overturned
because he failed to follow the treating physician rule is without merit.

Still, the Undersigned considers Plaintiff's contention that the ALJ did not properly
consider Dr. Tolbert's opinion.  But this presents its own problem.  Namely, the Undersigned is
uncertain what medical opinion Plaintiff refers to when he speaks of Dr. Tolbert's opinion "that
Plaintiff is limited to specific limitations, sitting for no more than 2 hours per day, lifting no more
than 10 pounds, and requiring frequent breaks due to pain." (Doc. 11 at 1).  Plaintiff does not cite

to the record or even specify when Dr. Tolbert wrote the opinion. In fact, the Undersigned cannot locate a single medical record that Dr. Tolbert signed in the record that the ALJ considered.

While Plaintiff also submitted additional medical evidence from Dr. Tolbert to the Appeals Council, these records do not offer much clarity into Plaintiff's alleged error. (R. at 2 ("We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence.")). Neither record references the opined limitation Plaintiff alludes to. (*See* R. at 26–30 (Dr. Tolbert's March 2021 medical notes reporting Plaintiff's lumbar extension is limited and increases his pain; his radiculopathy seems to be worsening; and lesions in his left axilla are consistent with hidradenitis suppurativa), 21–24 (Dr. Tolbert's June 2021 medical notes reporting Plaintiff's "coronary artery status is probably better than it has been in years" and his "lumbar radiculopathy and sacral radiculopathy seem to be well controlled" with medication)). Being unable to locate any pertinent record, the Undersigned cannot more fully evaluate this assigned error.

Ultimately, this portion of Plaintiff's filing is fatally vague, unclear, and asks the Court to apply out-of-date law. Plaintiff's first assignment of error should be overruled.

### B. The ALJ's Review of Plaintiff's Symptom Severity

Plaintiff's next assignment of error states:

The ALJ erred in finding Plaintiff's statements about the intensity, persistence, and limiting effects of their symptoms "not entirely consistent" with the evidence, violating Social Security Ruling (SSR) 16-3p. The ALJ failed to adequately consider Plaintiff's consistent reports of chronic pain, fatigue, shortness of breath and mental health symptoms, which are corroborated by medical records, multiple doctors notes third party statements, or treatment history. The ALJ's reliance on Plaintiff's ability to perform limited daily activities to discredit their symptoms misapplies the standard for evaluating subjective complaints, as sporadic or minimal activities do not equate to the ability to sustain full-time work. See Smolen v. Chater, 80 F.3d 1273,1284 (9th Cir. 1996). This error affected the ALJ's RFC assessment and the ultimate disability determination.

(Doc. 11 at 1–2 (cleaned up)).

When a plaintiff alleges symptoms of disabling severity, the ALJ must follow a two–step process for evaluating those symptoms. *See* 20 C.F.R. § 404.1529; SSR 16–3p, 2016 WL 1119029, *3 (March 16, 2016). First, the ALJ must determine whether the individual has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged. Second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. *See also* 20 C.F.R. § 404.1529(c)(3).

In performing this assessment, the ALJ is not required to analyze all seven factors but must show that he considered the relevant evidence. *Roach v. Comm'r Soc. Sec.*, No. 1:20–cv–01853–JDG, 2021 WL 4553128, at *10–11 (N.D. Ohio Oct. 5, 2021). Indeed, the ALJ's assessment of an individual's subjective complaints and limitations must be supported by substantial evidence and be based on a consideration of the entire record. *Rogers*, 486 F.3d at 247 (internal quotation omitted). Nonetheless, it remains the province of the ALJ—not the reviewing court—to assess the consistency of subjective complaints about the impact of a plaintiff's symptoms with the rest of the record. *See id.* "[A]bsent a compelling reason," an ALJ's credibility/consistency determination will not be disturbed. *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

The Undersigned notes that once again Plaintiff's assigned error is vague. He alleges that the ALJ failed to consider Plaintiff's corroborated reports of symptoms but fails to cite any specific record support. He merely states the ALJ failed to "adequately consider" his reports of "chronic pain, fatigue, shortness of breath and mental health symptoms." (Doc. 11 at 2). Regardless, the Undersigned concludes that the ALJ sufficiently evaluated Plaintiff's subjective complaints and the relevant evidence.

The ALJ acknowledged that Plaintiff alleged his ability to work is limited due to a back injury, heart failure, depression, and anxiety. (R. at 40 (citing R. at 263–270, 274–82, 286–91, 308–13)). He found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (*Id.*). But Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms did not match the medical evidence and other evidence in the record. (*Id.*).

Relating to Plaintiff's reported physical symptoms, the ALJ considered Plaintiff's history of coronary artery disease. He considered that Plaintiff reported symptoms of chest pain or discomfort, palpitations, shortness of breath, and lightheadedness. (R. at 40 (citing *e.g.*, R. at 376, 381, 402–03, 468, 470, 704)). Yet, the ALJ highlighted that despite these reported symptoms, Plaintiff's physical examinations generally displayed normal heart rate and rhythm; no murmurs, rubs or gallops; no lower extremity edema; normal respiratory effort; and normal oxygen saturation. (*Id.* (citing *e.g.*, R. at 377, 469, 686, 705)). In fall 2022, Plaintiff also had normal Holter monitor results and echocardiogram results. (*Id.* (citing R. at 468, 519–22, 644–77)). Though Plaintiff was recommended to take stress tests, the ALJ noted the record did not contain any results of one. (R. at 40–41 (also noting Plaintiff "refused [a stress test] due to the minute possibility of adverse reaction" and citing R. at 683)). Against this backdrop, the ALJ concluded

that "although [Plaintiff] has a significant cardiac history with some residual symptoms, his allegations concerning the severity and limiting effects of his symptoms are not fully consistent with the objective findings on examinations and other testing."  (R. at 41).

The ALJ also highlighted Plaintiff's allegations that his back pain limits his ability to work. (R. at 41).  The ALJ considered that Plaintiff underwent microdiscectomy in 2017 after a 2016 x-ray of his lumbar spine showed facet arthropathy and mild degenerative changes in L5-S1.  (*Id.* (citing R. at 804); *see also* R. at 367).  On the other hand, the ALJ considered that the record contained no other imaging of Plaintiff's back.  (R. at 41).  Still more, examinations generally showed Plaintiff had full range of motion, was not in acute distress, and had no noted focal neurological deficits, such as antalgic gait or motor weakness.  (*Id.* (citing R. at 352, 367–70)). The ALJ also considered that Plaintiff used a cane at a consultative examination in December 2022 because of a recent fall.  (*Id.* (citing R. at 559–61)).  But he noted that despite weakness in his hip flexors, Plaintiff was able to get on and off the examination table without help, had normal posture, had full lower extremity strength, was able to sit and stand without difficulty, had normal sensation, and was able to carry out purposeful movement.  (*Id.* (citing R. at 559–61)).  The ALJ also highlighted that there are no other records of Plaintiff using an assistive ambulatory device.  (*Id.*). And Plaintiff did not have spinal surgery, injections, or other specialized back treatment during the relevant period.  (*Id.*).  The ALJ also noted that medications improved his low back pain.  (R. at 41 (citing R. at 349, 353, 367)).  Ultimately, the ALJ found that Plaintiff's reported symptom severity was "inconsistent with the objective findings of only mild abnormalities on imaging and examinations as well as the [Plaintiff's] positive improvement in symptoms with conservative medication management."  (*Id.*).

The ALJ further considered Plaintiff's allegation that "recurrent abscesses in the left axilla limit his ability to work." (R. at 42). The ALJ noted that Plaintiff sought care after experiencing pain in the left axilla. (*Id.* (citing R. at 403)). At one appointment in July 2021, an examination revealed two lesions. However, the ALJ noted the clinician did not recommend treatment. (*Id.* (citing R. at 405–07)). A year later, Plaintiff complained of a cyst in the left armpit, but an examination revealed "no substantial abscess." (*Id.* (citing R. at 387, 412)). And a few times throughout 2023, Plaintiff took antibiotics for a mass in his left axilla. (*Id.* (citing R. at 726, 738–45, 786–88)). Again, examinations showed no weakness or limitation of range of motion in the upper extremity or any other abnormalities. (*Id.* (citing R. at 726, 787)). The ALJ ultimately concluded that Plaintiff's allegations concerning recurrent cysts/abscesses are inconsistent with the infrequency of his complaints, the positive improvement with antibiotics, the lack of any surgical intervention or incision and drainage for the cysts, and the absence of associated objective findings such as reduced upper extremity strength or limited range of motion. (*Id.*).

Relating to Plaintiff's reported mental impairment symptoms, the ALJ noted that Plaintiff testified that "he does not consider himself depressed and he did not describe more than minimal symptoms or limitations related to depression." (R. at 37; *see also* R. at 61 (Plaintiff statement at the disability hearing that "I don't consider myself depressed.")). That said, the ALJ examined Plaintiff's alleged symptoms related to anxiety. He noted that Plaintiff was diagnosed with and treated with medication for anxiety and associated symptoms like worrying and racing thoughts. (R. at 38 (citing R. at 730–733)). The ALJ also considered that "high levels of anxiety" contributed to at least one of Plaintiff's emergency room visits. (*Id.* (citing R. at 402–03)). And Plaintiff's wife reported that Plaintiff handled stress and changes poorly and was "stress[ed] out, depressed and angry . . . about his pain." (*Id*. (citing R. at 290). Yet the ALJ also observed that Plaintiff

spent time with others over the phone and was able to go out in public and maintain doctor's appointments.  (*Id.* (citing R. at 289)).  The ALJ further noted that despite his symptoms, Plaintiff is "mostly independent" in his daily activities including personal care, errands, and managing finances.  (*Id.* (citing R. at 292–299)).

The ALJ additionally highlighted that Plaintiff was cooperative during a 2023 consultative psychological examination and presented with normal speech, logical though processes, and did not have difficulty paying attention.  (R. at 41 (citing R. at 730–33)).  The ALJ also noted that the examiner reported Plaintiff "denied having any significant social issues."  (R. at 38 (citing R. at 731)).  And, Plaintiff's other mental examinations were "routinely . . . within normal limits showing that he was oriented in all spheres and had normal attention, speech, and behavior."  (R. at 41 (citing R. at 352–53, 469, 686, 741)).  The ALJ further emphasized that Plaintiff "has not required inpatient psychiatric care for acute anxiety or other mental health symptoms, and there are no records showing that he has participated in specialized treatment with a psychiatrist, psychologist, or other mental health professional."  (*Id.*).  He concluded that "[t]he objective evidence and treatment history tends to show that [Plaintiff's] anxiety is not as severe, frequent, or limiting as he claims."  (*Id.*).

The Undersigned finds no error in the ALJ's evaluation of Plaintiff's subjective complaints of pain and symptoms.  The ALJ did not, as Plaintiff's says, rely only on Plaintiff's "ability to perform limited daily activities" to discredit Plaintiff's allegations of the intensity, persistence, and limiting effects of his symptoms.  (Doc. 11 at 1–2).  While true that the ALJ considered Plaintiff's daily routine, the ALJ also considered Plaintiff's allegations against the objective evidence in the record and other considerations outlined in 20 C.F.R. § 404.1529(c)(3).  Simply put, the ALJ took

12

account of the whole record when making his findings.  At base, Plaintiff has not presented a "compelling reason" to disturb the ALJ's credibility determination.  *Smith*, 307 F.3d at 379.

### C.     Plaintiff's RFC

The Undersigned next considers Plaintiff's allegation that the residual functional capacity finding was not supported by substantial evidence:

> The ALJ's RFC determination that Plaintiff can perform, light work with certain limitations is not supported by substantial evidence . . . .  At Step Four, the ALJ erroneously concluded that Plaintiff could perform work as a sedentary worker, despite evidence that Plaintiff's impairments preclude the physical and mental demands of that job . . . .  As a result, the ALJ's findings at Steps Four and Five are flawed and warrant reversal.

(Doc. 11 at 1–2).

Yet again, Plaintiff merely gestures at this error without record support, leaving the Undersigned to fill the gaps for him.  (*See also* Doc. 14 at 2 ("The ALJ's assessment of Plaintiff's [RFC] did not align with the medical evidence.")).  Upon review, the Undersigned finds the ALJ appropriately considered the record in crafting Plaintiff's RFC, and he built a logical bridge between the evidence and his conclusion.

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from [his] impairments."  *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a).  When determining the RFC, the ALJ must evaluate several factors, including medical evidence, medical opinions, and the plaintiff's testimony.  *Henderson v. Comm'r of Soc. Sec.*, No. 1:08–cv–2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004)).  In doing so, the ALJ must resolve conflicts in the record.  *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984).  To that end, an ALJ "is only required to include in the residual functional capacity those limitations he finds credible and supported by the record."  *Beckham v.*

*Comm'r of Soc. Sec.*, No. 1:19–cv–576, 2020 WL 5035451, at *7 (S.D. Ohio Aug. 26, 2020) (quoting *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 170 (6th Cir. 2020)). And an ALJ is not required to adopt a medical opinion verbatim. *See, e.g.*, *Poe*, 342 F. App'x at 157 ("Although the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding."). In the end, the ALJ's opinion—read as a whole—must build a logical bridge between the evidence and the ALJ's conclusions. *Davis v. Comm'r of Soc. Sec.*, No. 2:19–CV–265, 2019 WL 5853389, at *5 (S.D. Ohio Nov. 8, 2019), *report and recommendation adopted*, No. 2:19–CV–265, 2020 WL 1482318 (S.D. Ohio Mar. 27, 2020).

Here, the ALJ's assessed RFC was extensive. Among other things, the ALJ found that Plaintiff was limited to lifting or carrying 5 pounds frequently and 10 pounds occasionally; to standing and/or walking with normal breaks for 2 hours in an 8-hour workday but with the opportunity to stand for 15 minutes at one time before needing to sit for 2 minutes before resuming standing so long as he is not off task; and to sitting with normal breaks for 6 hours in an 8–hour workday but with the opportunity to sit for 1 hour before needing to stand for 2 minutes before resuming sitting so long as he is not off task. (R. at 39). The ALJ also found that Plaintiff was limited to performing simple routine tasks with no more than occasional changes in the routine work setting. (*Id.*).

In building Plaintiff's RFC, the ALJ considered the medical evidence and opinions related to Plaintiff's physical and mental impairments. In addition to the discussion of record evidence above, the ALJ considered an October 2021 consultative examination performed by Kathryn Francescon, FNP that opined Plaintiff "may have difficulty with standing for extended periods of time" but "would likely be able to sit for extended periods of time." (R. at 43 (citing R. at 370)).

14

The ALJ found this opinion somewhat persuasive, noting that FNP Francescon's statements were speculative and vague, and she failed to record significant objective findings or observations that would support the limitations. (*Id.*). But the ALJ also noted that the medical evidence, as a whole, was consistent with the standing, walking, and sitting restrictions articulated in the RFC. (*Id.*).

The ALJ considered a December 2022 consultative exam by Dr. Travis Parkulo that opined Plaintiff "is limited in the ability to sit, stand, or ambulate secondary to his right leg pain." (*Id.* (citing R. at 561)). The ALJ concluded that this limitation was "too vague to be more than modestly persuasive because the degree or amount of limitation is not quantified." (*Id.*). Yet the ALJ found the Dr. Parkulo's opinion related to Plaintiff's hip flexor weakness supported some limitation to standing and walking. (*Id.*). The ALJ also noted that Dr. Parkulo's observations that Plaintiff had an antalgic gait and used a cane were due to a recent fall and did not support greater standing or walking restrictions. (*Id.* (citing R. at 559–60)). The ALJ further concluded that despite the doctor finding no limitation related to Plaintiff's manipulative abilities, other evidence in the record required some restriction to Plaintiff's handling and reaching during the workday. (R. at 44 (citing R. at 561, 565)). Finally, the ALJ highlighted that Plaintiff reported to Dr. Parkulo that he had a ten-pound lifting restriction placed on him by his cardiologist. (R. at 44–45 (citing R. at 559)). But the ALJ could not locate such a restriction in the written record. (*Id.*). Despite this, the ALJ concluded Plaintiff's symptoms of back pain, leg pain, chest pain, and shortness of breath "are reasonably consistent with a restriction to sedentary work, which involved lifting/carrying a maximum of 10 pounds only on an occasional basis." (R. at 45).

The ALJ also considered APRN April Gillespie's suggestion that Plaintiff engage in no heavy lifting or strenuous activities for one week. (R. at 44 (citing R. at 604). But he noted that the opinion was minimally persuasive because APRN Gillespie's opinion was limited in duration

and did not accurately reflect his long-term work-related abilities and limitations.  (*Id.*).

Rounding out the ALJ's consideration of Plaintiff's physical impairment records, the ALJ spoke to the prior administrative findings of the state agency medical consultants.  (*Id.* (citing R. at 90–96, 99–108)).  There, the state agency consultants opined that Plaintiff remained capable of light work with some postural restrictions.  (R. at 90–96 (opining Plaintiff can stand or walk for a total of 4 hours per day and can sit for a total of 6 hours per day), 99–108 (same)).  The ALJ found these opinions no more than moderately persuasive.  (R. at 45).  He concluded that Plaintiff's physical impairments are more severe and cause greater limitations.  (*Id.*).

In considering the opinion evidence related to Plaintiff's mental impairments, the ALJ attended to Plaintiff's May 2023 examination with consultative psychologist Christie Kincaid, PsyD.  (R. at 44 (citing R. at 730–733)).  In that record, Dr. Kincaid opined that Plaintiff "is likely able to understand instructions but may have trouble recalling them" and "may have difficulty completing tasks in a timely manner due to concentration issues."  (*Id.* (citing R. at 732)).  She further opined that Plaintiff had marked impairments in understanding, retaining, and following simple instructions; a moderate impairment in sustaining concentration and completing tasks presented in a normal time; and a moderate impairment in adapting and responding to the pressures of normal day-to-day work activities.  (*Id.* (citing R. at 733)).  The ALJ found these opinions only mildly persuasive.  (*Id.*).  He highlighted that Dr. Kincaid's assessment of Plaintiff's marked limitation in understanding simple instructions was inconsistent with her statement that he can likely understand instructions.  (*Id.*).  The ALJ also observed that during the examination, Plaintiff's remote memory was intact, he was fully prepared to participate in the interview, he understood instructions, and he provided coherent responses, suggesting no more than a moderate limitation in his ability to understand, remember, and carry out information.  (R. at 44 (citing R. at

16

732–33)).  And Dr. Kincaid's opinion that Plaintiff has a moderate limitation in sustaining concentration and completing tasks was premised not on Plaintiff's inability to do those things, but rather on Plaintiff not attempting one of the examination tasks.  (*Id.* (citing R at 732–33).  Of her other conclusions, the ALJ found those consistent with the evidence in the record.  (*Id.*).

Finally, the ALJ considered the state agency psychologist's opinion that Plaintiff was limited in his ability to carry out detailed instructions; to maintain attention and concentration; to perform a normal workday at a consistent pace without interruptions from symptoms; to respond appropriately to changes in the work setting; and to interact appropriately with the general public.  (R. at 45 (citing R. at 101, 105–06)).  The ALJ explained that the state agency psychologist offered little explanatory support for her conclusions.  (*Id.*).  And she failed to resolve conflicts between her opinion and other record evidence she reviewed.  (*Id.*).  Ultimately, the ALJ found that the record supported some restrictions to simple routine tasks with no more than occasional changes to the work setting.  (*Id.*).

The Undersigned again underscores that Plaintiff fails to cite specific records opining the limitations that he says the ALJ erred by not including in the RFC.  (*See* Doc. 11 at 1 (stating only Dr. Tolbert opined Plaintiff is restricted to sitting for no more than 2 hours per day; lifting no more than 10 pounds, and requires frequent breaks but not providing more details about the record), 2 (stating the ALJ failed to incorporate Plaintiff documented limitations including the need for frequent breaks but not providing record citations)).  And Plaintiff's conclusory gesture to omitted "sitting/standing/walking" and "mental health-related" limitations does not provide the Undersigned with much guidance either.  (*Id.* at 2).  But the discussion above demonstrates the ALJ's RFC conclusion was supported by substantial evidence.  The ALJ walked through the relevant medical opinions and explained why he found each persuasive or not persuasive.  In other

words, he adequately built a logical bridge between the evidence and his conclusion, as he is required to do.  *See Davis*, 2019 WL 5853389, at *5.

Fundamentally, Plaintiff wishes "the ALJ had interpreted the evidence differently." *Glasgow v. Comm'r of Soc. Sec.*, No. 2:15-CV-1831, 2016 WL 2935666, at *7 (S.D. Ohio May 20, 2016), *report and recommendation adopted*, No. 2:15-CV-01831, 2016 WL 4486936 (S.D. Ohio Aug. 26, 2016), *aff'd*, 690 F. App'x 385 (6th Cir. 2017).  The law prohibits the Court from reweighing the evidence and substituting its judgment for that of the ALJ.  *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.").

In sum, the ALJ properly accounted for the medical opinions and prior administrative medical findings in this case, his reasoning is easily traced, and his ultimate RFC finding was supported by substantial evidence.  Accordingly, the Undersigned finds no error.

### D.     The Vocational Expert's Testimony

Plaintiff next alleges errors with the ALJ's treatment of the Vocational Expert's testimony:

> The ALJ failed to resolve conflicts between the vocational expert's (VE) testimony and the Dictionary of Occupational Titles (DOT), as required by SSR 00–4p. At Step Five, the ALJ relied on VE testimony that Plaintiff could perform other jobs in the national economy, such as assembler or sorter, but the hypothetical posed to the VE did not incorporate all of the Plaintiff's documented limitations, including the courts own statements for the need for frequent breaks, restrictions on sitting/standing/walking, or mental health–related limitations.

(Doc. 11 at 2 (cleaned up)).

In determining whether a plaintiff can perform his past relevant work, the Social Security Administration "will ask [a plaintiff] for information about work [they] have done in the past,"

and it "may use the services of vocational experts or vocational specialists . . . to obtain evidence" to determine whether a plaintiff "can do [their] past relevant work, given [their] residual functional capacity." 20 C.F.R. § 404.1560(b)(2). As this provision makes clear, an ALJ does not err by relying on a vocational expert to develop the record regarding a plaintiff's past relevant work experience. The Undersigned generously construes this portion of Plaintiff's filing as alleging two distinct errors related the VE's testimony and the ALJ's treatment of the same.

### 1.    The ALJ's Hypothetical

Plaintiff first pushes back on the hypothetical the ALJ posed to the VE at the December 2023 disability hearing. In that hearing, the ALJ asked the VE to assume a hypothetical individual with Plaintiff's age, education, and past work experiences had workplace limitations that were nearly identical to Plaintiff's ultimate RFC. (R. at 69–71; *compare id. with* R. at 39 (Plaintiff's RFC including all the limitations from the hearing hypothetical but omitting the Agency's definition of "occasionally")); *see also* SSR 83-10 (defining "occasionally" as "from very little up to one-third of the time"). In response to the ALJ's asking if such an individual could do Plaintiff's past work as generally or actually performed, the VE responded that past-relevant work is eliminated because "[Plaintiff]'s past work was semi–skilled or skilled, and this hypothetical is limited to unskilled work activity." (R. at 71). The VE testified that the hypothetical individual could perform the following sedentary, unskilled jobs: sorter, Dictionary of Occupational Titles ("DOT") code 521.687–086, approximately 28,000 positions nationally; inspector, DOT code 669.687–014, approximately 33,000 positions nationally; and assembler, DOT code 713.687–018, approximately 15,000 positions nationally. (R. at 71–72). In response to the ALJ's subsequent hypotheticals that included additional scheduled breaks, off task time of greater than 15 percent,

or missing two workdays per month due to symptoms, VE noted those limitations were work preclusive.  (R. at 73).

Of this exchange, Plaintiff states "the VE did not incorporate all of Plaintiff's documented limitations, including the court's own statements for the need for frequent breaks, restrictions on sitting/standing/walking, or mental health-related limitations."  (Doc. 11 at 2 (cleaned up)).  The Undersigned takes this to mean Plaintiff faults the ALJ for excluding from his first hypothetical—which was adopted as Plaintiff's RFC—work preclusive limitations such as off-task time and frequent breaks.  However, the ALJ is not required to incorporate all limitations in his hypothetical questions posed to the VE—only those he finds credible and supported by the record.  *See Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 421 (6th Cir. 2014) (noting an ALJ's "hypothetical questions were proper because the ALJ incorporated all of the functional limitations that she deemed credible"); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a [VE] and is required to incorporate only those limitations accepted as credible by the finder of fact.").  As explained above, the ALJ did not find the limitations Plaintiff desires supported by the record.  And the RFC is supported by substantial evidence.  This error is without merit.

### 2.    Resolution of Conflicts

Plaintiff's other relevant assigned error alleges the "ALJ failed to resolve conflicts between the [VE's] testimony and the DOT, as required by SSR 00-4p."  (Doc. 11 at 2).  The policy interpretation ruling Plaintiff cites states that before relying on a VE's evidence to support a disability determination, the ALJ must identify and obtain a "reasonable explanation" for conflicts between the VE's occupational evidence and information in the DOT.  SSR 00-4p.  The ALJ must also explain how any conflicts that were identified were resolved.  *Id.*

At the disability hearing, the ALJ asked the VE if her testimony was consistent with the DOT and, if not, what variables she based on her professional experience. (R. at 73). The VE responded that there are differences which the DOT "just does not address." (*Id.*). Specific to limitations related to standing and walking with the opportunity to sit or stand, the VE noted that the DOT "does not specify all of the demarcations across the continuum, and it does not address a sit/stand option at all." (R. at 73–74). The VE further noted that the DOT does not make certain distinctions related to using one's upper and lower extremities to push and pull. (R. at 74). Nor does it make distinctions between using bilateral hands or one hand to perform occupations or between types of climbing. (*Id.*). She also stated the DOT does not rate commercial driving, the use of handheld assistive devises, absenteeism, or off-task time. (*Id.* (calling the ALJ's attention to their previous conversation about the last three)). The VE concluded that all those aspects of her testimony were based upon her education, training, and work experience as a certified rehabilitation consultant. (*Id.*).

In considering whether jobs exist in the national economy that Plaintiff could perform given his age, education, work experience, and RFC, the ALJ noted his conversation with the VE. (R. at 46–47). The ALJ acknowledged that the VE's testimony was consistent with the DOT except for aspects she based upon professional knowledge and experience. (R. at 47). Ultimately, the ALJ relied on the VE's testimony in concluding that Plaintiff is capable of "making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id.*).

The Undersigned concludes that the ALJ properly considered the VE's testimony in compliance with SSR 00-4p, and he resolved any perceived conflicts between the VE's testimony and the DOT. He correctly explained the factors not addressed in the DOT that the VE spoke to based upon her professional knowledge and experience. (R. at 47). Fatally, Plaintiff does not

identify any specific conflict the ALJ failed to resolve in this discussion. *See, e.g., Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) ("[I]ssues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" (citation omitted)). As such, the Undersigned finds no reversible error.

### E.     Weight of Prior Opinion

Plaintiff's next assignment of error alleges:

> The ALJ improperly assigned little weight to the opinion of the court in [Plaintiff's previous case] from 2017 thru 2019, the ALJ must consider opinions from non-acceptable medical sources and articulate the weight given to such opinions. The ALJ's cursory dismissal of this evidence, without adequate explanation, violates regulatory requirements and undermines the RFC determination.

(Doc. 11 at 2). Again, Plaintiff's assignment of error is not a model of clarity. But, reading it generously, the Undersigned construes it as finding fault with the ALJ's treatment of a prior administrative decision.

In *Drummond v. Commissioner of Social Security*, the Sixth Circuit held that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." 126 F.3d 837, 842 (6th Cir. 1997). In that case, a claimant's initial claim for SSI was denied when an ALJ found that she was capable of sedentary work. *Id.* at 838. When the claimant later re-filed her disability claim, a second ALJ found that she was capable of medium-level work—unlike the sedentary RFC finding of the first ALJ—and denied the re-filed claim. *Id.* at 839. After explaining that "[r]es judicata applies in an administrative law context following a trial type hearing," the Sixth Circuit held that the second ALJ was bound by the sedentary RFC determination of the first ALJ because there was no new or additional evidence of an improvement in the claimant's condition. *Id.* at 841–842. The Sixth Circuit reasoned that "[j]ust as a social security claimant is barred from

relitigating an issue that has been previously determined, so is the Commissioner." *Id.* The Social

Security Administration subsequently issued an Acquiescence Ruling explaining how the ruling

in *Drummond* would be applied to claims in the Sixth Circuit:

> When adjudicating a subsequent disability claim with an adjudicated period under
> the same title of the Act as the prior claim, adjudicators must adopt such a finding
> from the final decision by an ALJ or the Appeals Council on the prior claim . . .
> unless there is new and material evidence relating to such a finding or there has
> been a change in the law, regulations or ruling affecting the finding or the method
> for arriving at the finding.

AR 98-4(6), *Effect of Prior Findings on Adjudication of a Subsequent Disability Claim Arising*

*Under the Same Title of the Social Security Act – Titles II and XVI of the Social Security Act*, 1998

WL 283902, at *3 (June 1, 1998).

The Sixth Circuit further addressed the scope of *Drummond* in *Earley v. Commissioner of*

*Social Security* by reiterating that *res judicata* applies to administrative proceedings. 893 F.3d 929

(6th Cir. June 27, 2018). The *Earley* Court explained that when a claimant files a later application

covering the same period as an earlier application, *res judicata* applies absent good cause to revisit

the earlier determination. *Id.* at 933. But the *Earley* Court explained that *res judicata* does not

apply when a claimant files a subsequent application seeking benefits for a different period.

Instead, "[w]hen an individual seeks disability benefits or a distinct period of time, each

application is entitled to review." *Id.* The *Earley* Court cautioned, however, that "fresh review is

not blind review." *Id.* at 934. Although an ALJ evaluating a subsequent application is not bound

to follow a previous determination, the ALJ may "nevertheless consider what an earlier judge did

if for no other reason than to strive for consistent decision making." *Id.*

Since then, this Court has said that *Earley* "clarified" the *Drummond* decision. *Teasley v.*

*Comm'r of Soc. Sec.*, No. 2:18-cv-1079, 2019 WL 2559514 at *5 (S.D. Ohio June 21, 2019). "The

Sixth Circuit explained that 'the key principles protected by *Drummond*—consistency between

proceedings and finality with respect to resolved applications'—do not prohibit the Social Security Administration 'from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in a prior proceeding.'" *Id.* (citing *Earley*, 893 F.3d at 933). Therefore, as this Court has noted, "it is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, albeit not binding, consideration in reviewing a second application." *Id.*

Here, Plaintiff previously filed an application for DIB alleging disability beginning on December 12, 2016. (R. at 79). The ALJ in that case, ALJ Prince, concluded Plaintiff was under a disability, as defined by the Social Security Act, from that day through April 11, 2019. (R. at 87). ALJ Prince further found Plaintiff's disability ended on April 12, 2019, and, as of the decision, he had not become disabled since. (R. at 89 (decision issued January 9, 2020)).

ALJ D'Amato discussed this prior opinion. He stated:

> The undersigned has considered the findings in the prior administrative law judge decision (B1A) and declines to adopt them because there is new and material evidence (see *Drummond v. Commissioner of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997) and Acquiescence Ruling 98-4(6) (SSA must adopt a finding of a claimant's residual functional capacity or other finding required under the applicable sequential evaluation process for determining disability that was made in a final decision by an ALJ or Appeals Council on a prior disability claim unless new and additional evidence or changed circumstances provide a basis for a different finding of the claimant's residual functional capacity); *Dennard v. Sec'y of Health and Human Svcs.*, 907 F.2d 598 (6th Cir. 1990) and Acquiescence Ruling 98-3(6) (SSA must adopt a finding of the demands of a claimant's past relevant work made in the final decision by the ALJ or Appeals Council on the prior disability claim); *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018) (prior ALJ findings are a legitimate consideration but are not binding on a different time period in the absence of new and material evidence)).

(R. at 36 (cleaned up)). The Undersigned finds that this discussion is consistent with the duty imposed on the ALJ by the Regulations and by the caselaw explained above. The ALJ considered

the prior favorable decision, which covered a different time period than Plaintiff's claim here, but concluded there was new and material evidence.  The ALJ scrutinized this new evidence in detail throughout the remainder of his decision, as discussed above.  To the extent Plaintiff would like the ALJ to more strongly weigh the prior decision even in light of changed circumstances, that is not consistent with Sixth Circuit precedent.  In other words, consistent with *Earley*, the ALJ took a fresh look at Plaintiff's new application and considered evidence relevant to it.  The Undersigned finds no error.

### F.      Transfer and Hearing Method

Plaintiff finally states that the fact that he was not provided an "in person Court [appearance] to face the personnel assigned to this case" is a reversible error.  (Doc. 11 at 2; *see also* Doc. 14 at 4; *but see* R. at 34 (noting Plaintiff's agreement to appear by telephone), 58 (the ALJ asking at the disability hearing "I just want to confirm that you have no problem proceeding with this hearing today by telephone.  Is that correct, sir?" and Plaintiff responding "I do not have any problem with proceeding"), 186–87 (remote hearing agreement form on which Plaintiff's counsel agreed to a telephone hearing and asserted his selection accurately reflected Plaintiff's voluntary determination)).  Plaintiff also finds fault that his case "was transferred to Livonia, MI offices for processing," but the Social Security Administration "did not cite reasons for the transfer."  (*Id.*).

Plaintiff cites no rule, regulation, or caselaw for the proposition that the Court must reverse an ALJ's finding of non-disability on these grounds.  The Undersigned additionally finds that Plaintiff, who was represented by counsel at his disability hearing (Doc. 53), had ample opportunities to be heard and present his case. *Cf. Ferriell v. Comm'r of Soc. Sec.*, 614 F.3d 611, 620 (6th Cir. 2010) (citation omitted) ("In the context of a social security hearing, due process

requires that the proceedings be 'full and fair.'").  The record shows Plaintiff appeared at the hearing before the ALJ and was afforded the opportunity to present evidence and state his position through his counsel.  *See* 20 C.F.R. § 416.1450.  This alleged error is without merit.

## IV.  CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors (Doc. 11) and **AFFIRM** the Commissioner's decision.

Date:  August 19, 2025

/s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s).  A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made.  Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).